318 P.2d 605

Don WOFFORD and Albert O. Lebeck, Appellants,

v.

Steve J. RUDICK and Mary R. Rudick, his wife, Appellees.

No. 6241.

Supreme Court of New Mexico.

Nov. 27, 1957.

Herman W. Atkins, Gallup, David Chavez, Jr., Santa Fe, for Don Wofford.

Hannett, Hannett & Cornish, Albuquerque, for Albert O. Lebeck.

George E. McDevitt, Gallup, for appellees.

COMPTON, Justice.

Appellants, defendants below, appeal from a judgment awarding damages for creating and maintaining a nuisance.

Appellees are the owners of The Redwood Lodge in Gallup. Appellant Lebeck is a joint owner with Elizabeth McDermott Diffley of Zia Courts, situated immediately east of appellees' lodge and appellant Wofford is their lessee.

The complaint charged that Lebeck and Diffley laid, maintained and used a sewer line along the west edge of their premises, leased by them to Wofford and that they

permitted leaks from the line to flow onto appellees' property, thereby rendering their premises unfit for business purposes. Appellees sought compensatory damages in amount of $5,000. Lebeck answered, admitting joint ownership of the Zia Court and denied all other allegations. He also cross-claimed against his lessee, Wofford, but that issue is not before us. Wofford, likewise, entered a general denial. He also alleged that any leak in the sewer line was due to a latent defect for which he was not responsible. The defendant Diffley was never served with process.

The jury awarded appellees damages in a total amount of $4,350; $750 for loss of profits, and $3,600 for inconvenience and annoyance. Judgment was entered upon the verdict and appellants appeal.

▆▆▆▆ The sufficiency of the evidence to sustain the verdict is challenged. The walls of the courts are parallel to each other and the distance between them is less than 5 feet. The sewer line was constructed between the courts in 1947 by Lebeck or someone under his direction. When Wofford leased Zia Court in 1952, he did not know the location of the sewer line. Appellees purchased their court in 1952, and at the time they observed a dampness in the basement under one of their units. So, it is clear that the nuisance was in an incipient stage as early as 1952. This dampness spread and appellees noticed a slight odor coming from the basement.

In the winter of 1953–1954, when heat was turned on in the basement, the odor was so strong that it was noticeable in 4 other units. The odor was such that appellees decided to call a plumber to locate the trouble. He uncovered the line and found it was made of clay tile, and there was a leaky connection. When toilets in the Zia Court were flushed, sewage disposal flowed from the opening. Wofford was immediately advised of this condition. He looked at the line, and then told Rudick to see Lebeck, the owner, about it. The owners were not in Gallup just then and Lebeck, Jr., who, at the time was caring for his father's business, was contacted by Rudick and informed about its condition. In January, 1955, Wofford and Lebeck, Jr. together inspected the opened sewer line and Lebeck, Jr. asked Rudick for a little time to repair it. Later, Rudick again contacted Lebeck, Jr. and asked him what he planned to do about it. Lebeck, Jr. told him that his plumber was in Denver and that he would attend to it soon, or words to that effect. Finally, Rudick informed Lebeck, Jr. that if nothing was done by the middle of February, 1955, he would seek the advice of an attorney in the matter. In reply, Lebeck, Jr. told him "to go ahead and see a lawyer", which Rudick did. Further, the City Building and Plumbing Inspector of Gallup made an inspection of appellants' court in March, 1955. He found the opened hole was then

some 6 feet in diameter with sewage water standing some 2 inches deep in it. The odor therefrom was characterized as "terrific", "rotten smell." The odor in 5 units of the court was so bad that apellees had to ventilate the rooms daily and spray them with disinfectants. The basement doors had to be left open. Prospective customers, after inspecting the rooms, manifestly would not take them. This went on for almost one year before the line was repaired. As a result, appellees lost customers. This evidence, we think, establishes a reasonable basis for the award of damages, both for loss of profit and for inconvenience, annoyance, and personal discomfort. While the amount of damages had not been established with exactness, the proof does show that appellees suffered substantial damages. This being so, uncertainty in amount does not defeat a recovery. J. R. Watkins Co. v. Eaker, 56 N.M. 385, 244 P.2d 540; Nichols v. Anderson, 43 N.M. 296, 92 P.2d 781. See 39 Am.Jur. (Nuisance) § 136, and supplement 45. Also see Annotation 142 A.L.R. 1307.

■ Appellant Lebeck assigns error in the refusal of the court to give the following instruction:

No. 4. "You are instructed that if you find that the sewer line was defective at the time that the premises were leased to Don Wofford, neverthe-less if you find that the defendant Albert O. Lebeck did not know of the defective condition of the sewer line at the time that he leased the premises to Don Wofford, or if he could not have known by the exercise of reasonable care of the defective condition of the sewer line, then your verdict must be for the defendant Albert O. Lebeck and against the plaintiffs."

We see no error in the refusal. The instruction would limit Lebeck's liability to his knowledge of the defective condition of the sewer line at the time of leasing. It completely disregards a situation where a structure is of such a defective nature at the time of letting, that the reasonable, ordinary and expected use of it may result in a nuisance. It was his duty to know the condition of the sewer line when he leased the premises. 64 Am.Jur. (Landlord and Tenant) § 758.

■ Appellant Lebeck further contends that the court erred in giving the following instruction:

No. 13. "In the event you find from a preponderance of the evidence that at the time of the leasing of the Zia Court by the lessor Lebeck to the defendant Wofford, the premises were in a defective condition likely to develop into a nuisance by reason of faulty construction or want of repair of the sewer line, the lessor and the defendant

Lebeck is liable to the plaintiffs for the damages to them shown by the evidence, if any.

"Likewise if the leased premises at the time of leasing to defendant Wofford were so defective that the reasonable, ordinary and expected use of the property will result in a nuisance, and the injury to plaintiffs results from the reasonable, ordinary and contemplated use of the Zia Court, the lessor Lebeck is responsible therefor. This is true although the premises if remaining unused would not of themselves be a nuisance or cause the injury complained of."

The contention must be rejected. From what we have just said, we readily reach the conclusion that instruction No. 13 properly declares the law with respect to a landlord's liability. Feeney v. New York Waist House, 105 Conn. 647, 136 A. 554, 50 A.L.R. 1539. Also see 32 Am. Jur. (Landlord and Tenant) § 764.

██ Lebeck finally contends that the court erred in refusing to instruct the jury that proof of negligence by him must be shown as a proximate cause of appellees' damages before they were entitled to recover. He cites in support thereof, Seiler v. City of Albuquerque, 57 N.M. 467, 260 P.2d 375. The case is not in point. There the action was based on alleged negligence. There is a vast difference in the principles of law regarding nuisances and negligence. Liability for negligence is based on want of care, while liability for nuisance exists regardless of the degree of care exercised to avoid injury. 39 Am.Jur. (Nuisance) § 4. The distinction was somewhat noted in Seiler v. City of Albuquerque, supra.

██ Appellant Wofford relies on the fact that the nuisance existed at the time he leased the premises. He contends, therefore, that since there was no proof of negligence on his part in its maintenance, liability does not attach to him. He tendered various instructions introducing the theory of negligence in the case which were refused and he assigns error. What we have said should dispose of the issue of negligence. An instruction on negligence would have presented a false issue to the jury. Care or want of care is not involved. Whether there was a wrongful invasion of property rights is the question, not whether it was negligently done. Though Wofford may not have known of its existence when he leased the premises, he knowingly permitted its continuance for several months, hence is liable as a joint tort feasor.

██ The evidence satisfies us that the nuisance existed when Lebeck leased the premises to Wofford; Wofford maintained it; both are jointly and severally liable in

damages for its consequences. Gordon v. Peltzer, 56 Mo.App. 599; Fow v. Roberts, 108 Pa. 489.

The judgment is affirmed and It Is So Ordered.

LUJAN, C. J., SADLER and McGHEE, JJ., and A. W. MARSHALL, D. J., concur.