362 P.2d 798

Francisco A. BAROS, Plaintiff-Appellee,

v.

Charles J. KAZMIERCZWK, Defendant-Appellant.

No. 6731.

Supreme Court of New Mexico.

May 2, 1961.

Rehearing Denied June 15, 1961.

Gilbert, White & Gilbert, Sumner S. Koch, Santa Fe, for appellant.

Lorenzo A. Chavez, Arturo G. Ortega, Melvin L. Robins, Albuquerque, for appellee.

MOISE, Justice.

This is an appeal from a judgment entered on a jury verdict in favor of plaintiff and against defendant, after trial of a suit growing out of a head-on collision between a car being driven by plaintiff's brother, Benjamin Baros, and in which plaintiff was a passenger, and one being driven by defendant. Plaintiff received injuries, the most serious of which was a compound comminuted fracture of the left femur at a point just above the knee. This required him to remain in bed in the hospital with the leg in traction for six weeks, after which the leg was placed in a cast where it remained for about a month after which he received physical therapy. He has a residual limitation of motion in the knee and experiences difficulty in running, going up and down stairs and walking on uneven ground. At the time of trial plaintiff's left thigh had a marked atrophy of at least three inches in circumference. The injury to the knee is such that development of arthritis is to be expected which could be treated conservatively at first, but would be likely to progress into such a painful condition as to require fusing of the knee joint by surgery.

Plaintiff was 27 years old at the time of the accident, a laborer who had earned $1 per hour when he worked at landscaping, truck driving, street cleaning, or at odd jobs. He would receive $40 when he worked a full week. At the time of the accident he had been working a few days, helping a friend make adobes for which he was to be paid $60 per thousand.

The accident happened about 8:30 in the evening on May 30, 1958. Plaintiff was sitting in the front seat of his brother's car, on the right side. The brother was driving and they were on their way from their home, a few miles north of the place

of the accident, to Espanola. They proceeded along U. S. Highway 64, 285 to a point where these roads meet U. S. Highway 84, which leads off to the right toward Espanola. At that point the highway is divided so that traffic proceeding toward Santa Fe goes to the right of an island and between it and a second island and continues on toward Santa Fe, and traffic for Espanola continues to the right past the second island. Traffic from Espanola toward Santa Fe passes on the opposite side of this second island. It is intended that traffic proceed only in one direction around the islands. There was no sign indicating it was "one-way," but there was a small sign about the size of a "Keep Off the Grass" sign on the end of the island closest to Espanola indicating that the road to Santa Fe was to the right side of the island.

Defendant had arrived in Santa Fe some three months before, and on the day in question had been out in his car by himself seeing the sights. He had spent the afternoon sightseeing north of the place of the accident, and because of the heat, had partaken of four beers. He proceeded toward Santa Fe, but at the intersection or "Y" described above made a mistake and instead of passing between the two islands on the road to Santa Fe, he stayed on the right side of the second island and found himself on the road into Espanola. When he realized this, he proceeded across the bridge looking for a place to turn around, and upon finding such a place did turn and retraced his steps. When he arrived again at the island, he again became confused, and realized too late that he should pass to the right of the island. He tried to turn into the right lane, but his wheels struck the curb on the island, whereupon he lost control of the car. The steering wheel was pulled from his hands, the car climbed the curb onto the island and veered to the left. It traveled across the gravelled surface of the island a distance of 126 feet, 3 inches, and then went into the roadway leading from the north toward Espanola, being the same roadway defendant had traveled through error a few moments previously. The car traveled an additional 45 feet in this roadway before it collided head-on with the car in which plaintiff was riding. Defendant was knocked unconscious by the impact and plaintiff was injured in the manner already described.

The verdict of the jury was for plaintiff in the amount of $32,000. However, upon consideration of a motion for a new trial or judgment non obstante veredicto, the court determined that a new trial should be granted unless a remittitur of $10,000 was agreed to. This was done, and a judgment was entered for $22,000.

The matters complained of by defendant and advanced as requiring reversal, have to do with the conduct of the trial.

His point I asserts that it was error for the court to have refused the instruction on

unavoidable accident tendered by defendant, and to have given an instruction concerning duties when driving on a "divided" highway.

The contentions made are that defendant was surprised and confused upon arriving at the end of the island by the fact that there was no sign saying, "Do Not Enter" or a proper directional sign, and further by the fact that the roadway to the left of the island was wide enough for two-way traffic. It is his contention that this brings him within the language of Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028, 1032, where we said:

"We do not mean to say that every motor vehicle accident case warrants the giving of an unavoidable accident instruction. On the other hand, the very nature of some of the motor vehicle cases, such as this, suggests that genuine questions of mere accident or of unavoidable accident, giving foundation for the instruction, may be present. A prominent feature may be one of surprise, sudden appearance and reasonably unanticipated presence of a pedestrian, combined with circumstances which present a fair issue as to whether the failure of a driver of a motor vehicle to anticipate or sooner to guard against the danger or to avoid it, is consistent with a conclusion of the exercise of his due care. In such cases, the trial courts are inclined to grant the instruction on unavoidable accident and their action in so doing is generally approved by the appellate courts."

The very language quoted does not support defendant's position. The presence of an island dividing traffic to right and left in a roadway traveled moments before when proceeding in the opposite direction is a far cry from a pedestrian suddenly appearing in the path of a car. We are unable to follow defendant's argument that he was so surprised by the sudden appearance and unanticipated presence of the island and divided roadway as to make what followed an unavoidable accident. While disavowing any intention of announcing a rule that highway conditions may not under certain circumstances present situations which might give rise to such surprise and bewilderment as to make a resulting accident unavoidable, we do not find them present under the facts of this case.

We note the specially concurring opinion of Justice McGhee in the case of Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95. That was a case of an intersection collision where the court had found that there was no negligence on the part of either driver and that the accident was unavoidable. While two judges determined on appeal that the case should be remanded for a new trial because the trial court had not

made sufficient findings of fact to support his conclusions, Justice McGhee concurred specially in the reversal because in his view of the case the record clearly showed there must have been negligence on the part of one or both of the drivers and accordingly the accident could not have been unavoidable. In the instant case, we are clear that reasonable minds cannot differ that defendant was negligent under all the facts proved in the case. It would have been error to have instructed on unavoidable accident. Pitner v. Loya, 67 N.M. 1, 350 P.2d 230.

■ Under this point defendant also objects to the court's instruction to the jury that § 64-18-18, N.M.S.A.1953, requiring driving to the right of physical barriers or intervening space provided for that purpose on divided highways and prohibiting driving over such barriers and intervening space, was applicable and that if they found that defendant had violated the statute and such action was the proximate cause of plaintiff's injury, then defendant was liable. The objection stated to the court was that the jury should be permitted to determine if the highway was a divided highway covered by the statute. The argument here is to the effect that it is not such a divided highway. Defendant cites no authority in support of his position, but aside from this, under the rule for preserving error in instructions for review in this court as expressed in State v. Comp-

ton, discussed at length infra, we decline to pass on this portion of point I.

Defendant's point II is addressed to claimed error in the court's giving of its instruction No. 2 which reads as follows:

"Under the issues thus formed, the burden of proof is on the plaintiff to prove, by a preponderance of the evidence, the material allegations of his complaint, which are denied by the defendant. On the other hand, the burden of proof is on the defendant to prove, by a fair preponderance of the evidence, the material allegations of its defenses, which are denied by the plaintiff."

The second sentence of the instruction was objected to at the time of trial because it was assertedly an "incorrect statement" and further since the defense of contributory negligence had been ruled out by the court it was claimed that there was "no issue on which there is any burden of proof upon the defendant," and the portion of the instruction objected to "would be confusing and misleading and prejudicial to the defendant."

It is defendant's position that since the single affirmative defense advanced by him in his answer had been ruled out by the court, there remained no issues on which he had the burden of proof, and that he was prejudiced by the giving of the second sentence of the instruction and that this

was reversible error. He cites and relies on the cases of Gerrard v. Harvey & Newman Drilling Co., 59 N.M. 262, 282 P.2d 1105, 1108, where we had the following to say:

"The purpose of instructions is to enlighten the jury. The instructions should call the attention of the jury to the specific issues which it must determine and should embrace only statements of law to be applied in the examination and determination of the issue. No statement should be included in any instruction which is likely to confuse or mislead any members of the jury."

and the case of State ex rel. Leonard v. Rosenthal, 123 Wis. 442, 102 N.W. 49, in support of his position.

To this argument plaintiff replies by asserting first that defendant's complaint cannot be considered because he did not present a proper instruction as required by State v. Compton, 57 N.M. 227, 257 P.2d 915, 916, calling our attention to syllabus No. 4, which reads as follows:

"Where trial court fails to instruct on certain subject, tendering of correct instruction is sufficient to preserve error, but, to preserve error where court has given erroneous instruction, specific vice must be pointed out to trial court by proper objection thereto *and correct instruction tendered, * * *"*

He also cites and relies on Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337. As a second argument he states, in effect, that assuming the instruction was erroneous, defendant not being prejudiced, this is not sufficient grounds for reversing the judgment.

■■ We proceed to an examination of the positions of the parties. We are of the opinion that the instruction as it was given is a stock instruction which is proper in most civil cases. However, where, as here, there are no affirmative defenses advanced by defendant the second sentence has no purpose or function and should not have been included. Gerrard v. Harvey & Newman Drilling Co., supra. We do not understand, however, that it necessarily follows from what was said in that case or in the case of Martin v. La Motte, 55 N.M. 579, 237 P.2d 923, cited therein, that whenever some superfluous or inapplicable material is included in an instruction, reversal is required. On the contrary, a reading of these two cases makes it clear that in both instances it was deemed necessary that the cases be reversed because of the prejudice which it was felt must have resulted therefrom. Compare Porter v. Ferguson-Steere Motor Co., 63 N.M. 466, 321 P.2d 1112. It is in this respect that the present case differs from the two cited above. Although there were no issues on which defendant had the burden of proof, the facts proved by plaintiff were so convincing and uncon-

trovertible that no amount of legal argument could persuade us that the conclusion reached was the result of any misconception as to defendant having any burden of proof. In other words, we state without hesitation, that we do not perceive of any possibility that defendant was prejudiced, and accordingly a reversal is not indicated. § 21–2–1(17) (10), N.M.S.A.1953 Comp.; State v. Compton, supra; Zamora v. Smalley, 68 N.M. 45, 358 P.2d 362.

A word should be said about State ex rel. Leonard v. Rosenthal, supra. This was an election contest case in which the court found numerous errors, including an error in instructions. The court does not discuss what the situation would have been if the instruction had been determined not to be prejudicial. Neither is it apparent if the case would have been reversed absent the other errors. We think it is distinguishable.

From the briefs in this case, and in other cases, we are convinced that there is some confusion among the bar as to the proper method to preserve error in the giving or refusing of instructions. We feel that this confusion has resulted from the fact that in the case of State v. Compton, supra, syllabus 4 prepared by the publisher did not accurately reflect the holding of the court. Thereafter, in Beal v. Southern Union Gas Co., supra, while quoting the pertinent language from State v. Compton, supra, the court went on and in explaining the holding used the same language as was contained in syllabus 4. We propose here to attempt clarification.

It is our understanding of the holding in State v. Compton that to preserve error in instructions for review, (1) it is sufficient if a correct instruction has been tendered, if the court has not instructed on the subject matter; (2) if, however, the court has instructed erroneously on a subject, even where a correct instruction has been tendered, it must be clear in the record that the error has been called to the court's attention. Where the court has instructed erroneously, it is not a prerequisite to a right to complain of an instruction that a correct instruction be offered—rather the important question concerns the clarity with which the errors in the instruction given have been called to the attention of the trial court. Where, as here, counsel pointed out the defect in the instruction and all that would have been required to correct it would have been to strike out and omit the second sentence, we do not perceive that any purpose would have been served by requiring the attorneys in the midst of a trial, to find a means to get the correct instruction in shape to tender in writing. We think defendant's counsel did all that was necessary and that the court could not have misunderstood or been misled. In view of our holding that the defendant was not prejudiced by the error in the instruction we could have passed over the contention just discussed, but felt a

short review of the rule in this regard would probably be salutary and for that reason have included the foregoing in the opinion.

As his third point relied on for reversal, defendant complains of instruction No. 15 given by the court for the reason that it included as elements of damages to be considered by the jury future medical expenses and loss of earnings resulting from plaintiff's disability. A medical expert testified that arthritis of the knee was reasonably to be anticipated and that it could be treated conservatively at the beginning, but in time it would not be unlikely that a fusing of the knee by surgery would be required. It is argued that since the doctor was not asked or was there any other evidence of possible cost of such future treatment, and no other qualified witness testified in this regard, it was error to permit the jury to speculate concerning future medical expense and that the giving of the instruction was reversible error. Concerning the disability or loss of earnings asserted by defendant to be insufficient as a basis for damages, we have already related the pertinent facts testified to in the record.

Plaintiff asserts that the error was not properly preserved for the reason heretofore discussed under point II. As we have pointed out, he is mistaken in his application of the rule and the error complained of, if it was error, was properly called to the attention of the court.

■ As was stated in Morris v. Cartwright, 57 N.M. 328, 258 P.2d 719, damages in a personal injury case are to be measured by loss of earning ability and not of actual earnings. Also, in that case the following language is quoted from Mazi v. McAnlis, 365 Pa. 114, 74 A.2d 108, 112:

"The consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. The true test is whether or not there is a loss of earning power, and of ability to earn money."

■ Accordingly, if it appears from the evidence that a person has a continuing disability resulting from the injury which has resulted in and will continue to result in loss of earnings, and there is proof of his age, occupation, rate of pay when working, and previous condition of health, there is sufficient to go to the jury even without proof of his earnings of any given period. Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407; Mobley v. Garcia, 54 N.M. 175, 217 P.2d 256, 19 A.L.R.2d 553; Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029.

The question of whether or not it was error to permit the jury to include in any award an amount for future medical expenses when there has been no estimate whatsoever in the evidence as to what this amounts to presents a more difficult problem.

There are numerous cases from other jurisdictions holding that even where the probability of future medical treatment is proven, it is error to submit the same as an element of damages to the jury where there is no competent testimony as to the cost of the treatment. Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059; American Produce Co. v. Gonzales, Tex.Com.App. 1928, 1 S.W.2d 602; Dickey v. Jackson, Tex.Com.App.1928, 1 S.W.2d 577; La Fave v. Lemke, 3 Wis.2d 502, 89 N.W.2d 312; Feinsinger v. Bard, 7 Cir., 195 F.2d 45; Tully v. Mahoning Express Co., 161 Ohio St. 457, 119 N.E.2d 831, 45 A.L.R.2d 1144; and the case of Shover v. Iowa Lutheran Hospital, Iowa, 107 N.W.2d 85, decided January 11, 1961, apparently overruling two earlier Iowa decisions holding otherwise. See note in 69 A.L.R.2d 1261, 1277. In this note, after discussion of cases denying future medical expenses, there are cited cases from five states (one, Iowa, has recently decided otherwise), which have decisions which apparently uphold awards of future medical expenses although proof of cost would appear to be absent.

◼ In the instant case, the doctor who treated appellant was on the witness stand and testified concerning the possible future need for medical and surgical care. However, he was not asked to estimate what this might amount to in money. Neither is there any evidence in the case as to past medical cost which it might be argued could be used as a yardstick for future expense. The evidence was certainly at hand by the physician who had treated appellant, or if he was not qualified because not in active practice but an employee of the Veterans Administration, then by calling some one who was qualified to give an estimate as to what this might reasonably amount to. No evidence at all having been adduced to serve as a guide to the jury, and upon which it could base its verdict we must conclude that there was error in the trial which requires a reversal.

Our attention has not been called to any New Mexico case holding differently. It might be argued that something less was required in Wofford v. Rudick, 63 N.M. 307, 318 P.2d 605. However, we find nothing therein which discloses that the best proof available in the circumstances of the case had not been produced and as we understand the rule this is all that is required.

4 Restatement of Torts, § 912, reads as follows:

"A person to whom another has tortiously caused harm is entitled to compensatory damages therefor if, but only if, he establishes by proof the extent of such harm and the amount of money representing adequate compensation with such certainty as the nature of the tort and the circumstances permit."

Here appellee failed to establish the amount of money which represented the future medical expense "with such certain-

ty as the nature of the tort and the circumstances permit."

Defendant's fourth point is addressed to claimed prejudice resulting to him because of alleged improper conduct by plaintiff's attorney in that he stated to the jury that defendant's counsel by objections to its introduction had attempted to keep from the jury an x-ray which was relevant evidence for the jury to consider. No record was made of the arguments. However, it does appear that immediately after arguments were concluded, counsel for defendant asked for mistrial, at which time he repeated what had transpired, to which account counsel for plaintiff did not object, and with which the court did not disagree. From this account it appears that when counsel made the statement, defense counsel arose and objected that the same was contrary to the fact, without mentioning prejudice, and the court advised the jury that they should rely on their own memories for what had occurred and that the arguments of counsel should not be considered as evidence. Upon overruling the motion for a mistrial the court stated that it did so because the jury had been admonished as requested by counsel.

■ Although improper argument which could well move this court to reverse a case might be made, Griego v. Conwell, 54 N.M. 287, 222 P.2d 606; Chavez v. Valdez, 64 N.M. 143, 325 P.2d 919, we do not feel that under the circumstances of this case the matter complained of attains this degree of seriousness. Also, the trial judge heard the remark when made and complied with counsel's request that the jury be admonished, and thereafter overruled his motion for a new trial, and upon passing on a later motion again raising the question denied a new trial. Under the facts here present we do not find any error or abuse of discretion. See Jackson v. Southwestern Public Service Co., supra; Padilla v. Chavez, 62 N.M. 170, 306 P.2d 1094.

In view of our conclusion on point 3, we do not consider necessary any discussion of defendant's fifth and final point claiming reversible error in the court's determination that the verdict was so excessive "as to indicate passion, prejudice and partiality and a mistake on the part of the jury as to the measure of damages" and granting a remittitur.

Because of the error of the court in instructing the jury that it could consider any future medical expenses in assessing damages, the cause must be reversed and remanded for a new trial on the question of damages only.

It is so ordered.

CARMODY and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.

Supplemental Opinion on Motion for Rehearing

MOISE, Justice.

By motion for rehearing the defendant argues that his Point V in his brief in chief should have been discussed by the court and not passed over as not being necessary to a decision.

Defendant argues that whereas the errors complained of in the instructions and determined in our holding on Point III could be resolved by a trial of the issue of damages only, a different result must follow where because of passion or prejudice an excessive verdict is rendered, and that under the law in this state such a defect cannot be cured by remittitur and requires a retrial of all the issues.

In support of his position he cites Nelson v. Hill, 30 N.M. 288, 232 P. 526, and Montgomery v. Vigil, 65 N.M. 107, 332 P.2d 1023. We do not think that these cases support defendant's position. Nelson v. Hill, supra [30 N.M. 288, 232 P. 526], is a case in which passion and prejudice were not found to be present but the jury had "simply overestimated the damages" under which circumstances a remittitur was ordered. Montgomery v. Vigil, supra [65 N.M. 107, 332 P.2d 1027], states that the correct rule is as announced in Hall v. Stiles, 57 N.M. 281, 258 P.2d 386, and then goes on to hold that the evidence did not support the ver-

dict rendered and was so excessive as to indicate "passion, prejudice, partiality, sympathy * * * or * * * [that] the jury has mistaken the measure of damages" and determined that a remittitur should have been ordered. It was stated that the excessiveness of the verdict was the only question on appeal, and that the finding of passion, prejudice, etc., did "not in [that] instance vitiate the jury's finding of negligence."

In the instant case the trial court found that the verdict of the jury was "so excessive an amount as to indicate passion, prejudice and partiality and a mistake on the part of the jury as to measure of damages," and granted a remittitur. This ruling conforms to the law as laid down in Montgomery v. Vigil, supra. The issues of negligence and liability have been decided by the jury on evidence so overwhelming that a contrary finding in this case would have been most shocking and surprising. There is no reason to believe that a retrial of the issue of negligence would have a different result. As already indicated, we do not believe that reasonable minds could differ on this question. Also, we feel the circumstances of this case to be such that there is no likelihood that the passion and prejudice extended beyond the issue of damages, or in any way permeated deliberation of the jury on the other issues submitted to it for determination so as to render

unjust holding the litigants to be foreclosed as to those issues by the jury's findings.

■ Accordingly, the situation is not unlike that present in Montgomery v. Vigil, supra, where the question of negligence was not an issue on appeal. No purpose would be served by a retrial of that issue and under such circumstances the same need not be retried. Downer v. Southern Union Gas Co., 53 N.M. 354, 208 P.2d 815. We do not know of any case in New Mexico where a new trial has been granted on the issue of damages only. However, we are impressed that the correct rule and the one followed by the vast majority of jurisdictions is to the effect that where the issue of damages is separable and distinct from the issues of negligence and proximate cause, upon reversal because of errors that crept into the determination of the amount of damages while no error was found present in the verdict as to the other issues, it is proper to limit the new trial to the issue in which the error was present. See annotations in 98 A.L.R. 941, and 29 A.L.R.2d 1199, covering inadequate verdicts. We perceive no basic difference where the verdict is excessive. Compare Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972, where new trial was granted on issue of liability alone without retrial of issue of damages.

In the case of Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029, 1042 the court found passion, prejudice, etc., but went on to say that "probably the jury was mistaken as to the measure of damages" and concluded that the error could be rectified by a remittitur. If the finding of liability was permitted to stand in that case where negligence and contributory negligence were issues on appeal, we do not comprehend why a different rule should apply where rather than fix the amount ourselves, we remand the case so the jury can again consider the damage question.

In both Montgomery v. Vigil, supra, and Jackson v. Southwestern Public Service Co., supra, it is clear that this court did not interpret Hall v. Stiles, supra, as requiring a reversal and new trial on all issues in every case where passion, prejudice, etc., were found to have tainted the verdict, as witness the affirmances in both cases upon condition that remittiturs be filed. If the finding of liability could be permitted to stand upon granting a remittitur, we discern no difference in permitting it to stand upon granting a new trial on the issue of damages under the facts of this case.

Defendant also complains that in our opinion we were in error in stating that counsel for appellant did not mention "prejudice" in objecting to the argument of counsel discussed under Point IV. An ex-

amination of the record discloses that we were correct in our statement. True, counsel did state in his motion for a mistrial made after the jury had retired and while they were deliberating on their verdict that the statements complained of were "greatly prejudicial," but it does not appear that any such statement was included in the original objections. We are satisfied with the disposition made by us of defendant's Point IV, and would merely add that the failure of counsel to claim prejudice as a basis for his objection was in no sense considered as determinative of the issue.

Finding no merit in defendant's motion for rehearing, the same is overruled and the cause is reversed and remanded on the question of damages only.

It is so ordered.

CARMODY and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.